UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMY ZIELINSKI, on behalf of himself and
all others similarly situated,

                        Plaintiff,

                -against-                                1:25-CV-1776 (LLS)

NEW YORK STATE CORRECTIONAL                    ORDER OF DISMISSAL
OFFICERS AND POLICE BENEVOLENT                 WITH LEAVE TO REPLEAD
ASSOCIATION, INC.; KATHY HOCHUL;
DANIEL MARTUSCELLO; JOHN DOES 1
THROUGH 100,

                        Defendants.

LOUIS L. STANTON, United States District Judge:

Plaintiff Jeremy Zielinski, who is currently incarcerated in the Woodbourne Correctional

Facility ("Woodbourne"), filed this *pro se* action asserting claims of federal constitutional

violations under 42 U.S.C. § 1983, claims of conspiracy under 42 U.S.C. § 1985 and associated

claims under 42 U.S.C. § 1986, as well as claims under state law. He sues: (1) the New York

State Correctional Officers and Police Benevolent Association, Inc. ("NYSCOPBA"), which he

describes as "[a] union representing New York State correction officers and other uniformed

prison security staff" (ECF 1, at 1); (2) Kathy Hochul, the Governor of the State of New York;

(3) Daniel F. Martuscello III, Commissioner of the New York State Department of Corrections

and Community Supervision ("DOCCS"); and (4) "John Does 1 through 100," whom he

describes as unidentified NYSCOPBA officers and executives "and otherwise conspirators and

organizers of the illegal strike at [Woodbourne] and other DOCCS facilities" (*id.* at 2-3). In his

complaint, in addition to damages and attorney's fees, Plaintiff seeks injunctive and declaratory

relief.

By order dated March 5, 2025, the court granted Plaintiff leave to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[1] (ECF 9.) By order dated March 31, 2025, the court denied Plaintiff's requests for immediate injunctive relief (ECF 6, 7), noting that the court would explain its reasons for denying such relief in a subsequent order that responds to Plaintiff's complaint (ECF 11). For the reasons discussed below, the Court dismisses this action, but grants Plaintiff 30 days' leave to replead his claims in an amended complaint, as specified below.

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

---

[1] Prisoners are not exempt from paying the full filing fee, even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

**BACKGROUND**

Plaintiff states that he:

> brings this action on behalf of himself and a class of all other incarcerated people in DOCCS facilities at any time during the strike more specifically described below. . . . A class action is authorized and warranted because the Class has thousands of members who have been subjected to substantially the same harms by the same defendants at the same time throughout all DOCCS facilities, making joinder of all impracticable.

(ECF 1, at 3.)

The following facts are drawn from the complaint[2]: Plaintiff states that "NYSCOPBA and its members have . . . vehemently opposed and sought to undo or make ineffective numerous changes to New York State statutes, regulations, and DOCCS policies aimed at improving safety and other conditions for incarcerated people, including safety from unlawful violence and other abuse by NYSCOPBA's members." (*Id.*) In 2021, the New York Humane Alternatives to Long-Term Solitary Confinement Act ("HALT Act") was passed, which "imposed significant restrictions on use of [Special Housing Unit confinement] . . .; created pathways for people sentenced to isolation to participate in counseling and rehabilitative programs . . . ; and mandates that[,] where possible[,] prison staff use non-violent de-escalation and intervention before resorting to force and formal disciplinary proceedings." (*Id.* at 4.) NYSCOPBA and its members, however, have "viciously and dishonestly opposed" the HALT Act and the resultant DOCCS policy changes. (*Id.*).

Yet, NYSCOPBA and its members failed to convince the public to oppose the HALT Act's passage and, once it was passed, failed in their court challenges to it. Thereafter, NYSCOPA members, in their role as DOCCS officers and employees, defied enforcing the

---

[2] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the complaint unless noted otherwise.

HALT Act. Eventually, "they settled on . . . [holding] an illegal work strike, . . . demanding . . . that . . . Hochul and Martuscello and the New York Legislature make numerous changes to law and policy adverse to incarcerated people, including repealing the HALT Act." (*Id.* at 6.) Plaintiff states that NYSCOPA and its members intended for their strike to "throw legitimate prison operations immediately into chaos and expose the Class, fellow DOCCS employees not participating in the conspiracy, and the public at large to significant and unpredictable danger." (*Id.*)

The strike began on or about February 17, 2025. Because, as a result of the strike, NYSCOPBA members left work or did not report to work, "Governor Hochul was forced to call up and deploy thousands of National Guard members to serve as temporary staff inside all of DOCCS's operating facilities." (*Id.*) The strike also caused:

> continuous confinement [of DOCCS prisoners] in "lockdowns" across the State, missed meals and medications, reduced food quantities, and denial of showers, phone calls, email access, postal mail delivery and transmission, law library services, medical and mental health care, commissary, food packages, prison employment and work release, rehabilitative treatment programs, basic and college education, legal visits and phone calls with attorneys on time-sensitive legal matters, and visitation with family and friends. The Strikers' illegal conduct also caused widespread fear and anxiety in the community due to lack of information on the health and safety of Class members and other DOCCS employees; and interfered with state operations at a massive scale, so severely that Governor Hochul had to declare a statewide disaster emergency.

(*Id.* at 6-7.)

NYSCOPBA members continued to participate in the strike despite a state-court finding, on February 19, 2025, that the strike was illegal, and despite Governor Hochul's orders "to the same effect." (*Id.* at 7.) NYSCOPBA representatives demanded, among other things, the following from Governor Hochul and DOCCS Commissioner Martuscello:

> [i]mmediate non-enforcement and repeal of the HALT Act; severe disciplinary sanctions for incarcerated people including harmful long-term isolation; restricted visitation and mandatory full-body x-ray scanning of all visitors without any basis

> for suspicion; elimination of food packages for incarcerated people; and
> autonomy of facility staff to shut down programs and activities and impose
> lengthy lockdowns without approval of DOCCS Central Office.

(*Id.*) In addition, "the Strikers . . . made extortionate demands for exorbitant pay increases and other benefits for themselves and other NYSCOPBA members." (*Id.*) Plaintiff asserts that, "[t]hose demands, if acquiesced to, will substantially reduce funds available for incarcerated people and programs under consideration, disrupt budgets arrived at after lawful and reasoned public debate, and cause irremediable damage to existing programs for the Class by forcing separation of essential civilian staff." (*Id.*) Furthermore, another effect of the strike has been the "cutting off [of] the Class from all means of communication during the outbreak of the Strike." (*Id.*)

Plaintiff states that "Hochul and Martuscello have not taken sufficiently forceful action. . . . Instead, they are 'negotiating' with the Strikers wholly outside of and in disregard of constitutional and statutorily prescribed law-making processes. . . ." (*Id.* at 8.) They "have 'agreed,' among other things, to not enforce the HALT Act for an unspecified period of time, to restrict visitation and other communication, and to impose severe restrictions . . . prohibited by state and other law, all on the pretext that there is a statewide 'emergency' in DOCCS facilities." (*Id.*) Hochul and Martuscello "cannot or will not protect the Class from the other defendants' ongoing and intended retaliation; and[,] absent immediate intervention[,] will effectively abdicate substantial control of DOCCS facilities to NYSCOPBA and its most corrupt and violent members." (*Id.* at 9.)

5

## DISCUSSION

### A.   Attorney's fees

To the extent that Plaintiff seeks attorney's fees, such a request is denied. *Pro se* plaintiffs are not entitled to attorney's fees under 42 U.S.C. § 1988. *See Kay v. Ehrler*, 499 U.S. 432, 437-38 (1991).

### B.   Plaintiff's request to proceed with this action as a class action and his attempts to assert claims on behalf of others

Inasmuch as Plaintiff requests to proceed with this action as a class action, the Court must deny that request. The Court must also dismiss any claims that Plaintiff asserts on behalf of others, including other people in DOCCS's custody. The statute governing appearances in federal court, 28 U.S.C. § 1654, "allow[s] two types of representation: 'that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself.'" *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007). Because a nonlawyer cannot bring suit on behalf of others, a nonlawyer *pro se* plaintiff cannot act as a class representative and bring a class action. *Rodriguez v. Eastman Kodak Co.*, 88 F. App'x 470, 471 (2d Cir. 2004) (summary order) (citing *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)); *Phillips v. Tobin*, 548 F.2d 408, 412-15 (2d Cir. 1976); *see Satchell v. City of New York*, 1:23-CV-11119 (GHW), 2026 WL 734821, at *5 (S.D.N.Y. Mar. 16, 2026) ("'[A] pro se prisoner cannot prosecute a class action.'" (citation omitted)). Accordingly, because Plaintiff does not allege that he is an attorney, the Court denies his request to proceed with this action as a class action and dismisses, without prejudice, any claims that he otherwise asserts on behalf of others.[3]

---

[3] The Court offers no opinion as to the merits of any claims that Plaintiff has attempted to assert in this action via a class action or otherwise on behalf of others.

6

**C.    Standing**

The Court must also dismiss Plaintiff's own claims for lack of standing. "Article III, Section 2, of the Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citation and internal quotation marks omitted). "Standing to sue or defend is an aspect of the case-or-controversy requirement." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997).

To demonstrate standing, a litigant must show that: (1) he has personally suffered some actual or threatened injury as a result of his opponent's alleged illegal conduct; (2) the injury is fairly traceable to his opponent's conduct; and (3) the injury is likely to be redressed by the requested relief. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). The Supreme Court of the United States has made clear that, as to standing, "the [litigant] must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). In addition, to show standing, the litigant must demonstrate "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant." *Id.* (internal quotation marks and citation omitted). Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks and citation omitted). The burden of establishing standing to sue rests with the party bringing the action. *Id.*

Moreover:

a generalized grievance, no matter how sincere, is insufficient to confer standing. A litigant raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the

7

Constitution and the laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

*Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (internal quotation marks and citation omitted). In short, standing requires a litigant to have "a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Accordingly, "[s]tanding requires more than just a 'keen interest in the issue.'" *Trump v. Hawaii*, 585 U.S. 667, 697 (2018) (citation omitted). Thus, "a prisoner cannot raise claims . . . to bring general allegations about prison conditions." *Palmer v. United States*, No. 21-CV-11721, 2022 WL 310208, *6 (D.N.J. Feb. 1, 2022) (citing *Hollingsworth*, 570 U.S. at 705).

With respect to Plaintiff's own claims, Plaintiff has alleged nothing to suggest that, as a result of any of the defendants' actions, he himself, as opposed to DOCCS prisoners in general, or the public at large, has suffered or will suffer any injury-in-fact—one that is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," *Lujan*, 504 U.S. at 560—that is fairly traceable to any of the defendants' actions, and that the relief he seeks will address that injury-in-fact, *see id.* The Court, therefore, dismisses Plaintiff's own claims for lack of subject matter jurisdiction, because Plaintiff lacks standing to raise them. *See* Fed. R. Civ. P. 12(h)(3); *Mahon*, 683 F.3d at 62.

In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead his own claims in an amended complaint in which he alleges facts sufficient to show standing.

**D.    Claims under state law**

With respect to Plaintiff's claims under state law, the Court declines to consider them under its supplemental jurisdiction. A federal district court may decline to exercise supplemental jurisdiction over claims under state law when it "has dismissed all claims over which it has

original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed Plaintiff's claims over which the Court has original subject matter jurisdiction, the Court declines to exercise its supplemental jurisdiction over any of Plaintiff's claims under state law. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**E.    Leave to amend is granted**

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "'should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts sufficient to show standing, the Court grants him 30 days' leave to replead his claims in an amended complaint in which he allege facts sufficient to show standing.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

## CONCLUSION

The Court dismisses this action. The Court dismisses Plaintiff's claims under federal law for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court declines to consider, under its supplemental jurisdiction, Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3). It is for these reasons that the court denied Plaintiff's requests for immediate injunctive relief. The Court, however, grants Plaintiff 30 days' leave to replead his claims in an amended complaint in which he alleges facts sufficient to show standing.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

SO ORDERED.

Dated:    April 20, 2026
          New York, New York

_____
          Louis L. Stanton
          U.S.D.J.

10